**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PHILIP ANDERSON

Plaintiff,

vs.

CHICAGO POLICE DETECTIVE GREGORY JONES, STAR # 21285
CHICAGO POLICE DETECTIVE, ROBERTO GARCIA, STAR # 20555
CHICAGO POLICE OFFICER ANDREW CRAIG, STAR # 7515
CITY OF CHICAGO,

Defendants

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, PHILIP ANDERSON, by and through his attorneys Stephen L. Richards and Joshua S.M. Richards and makes the following complaint against CHICAGO POLICE DETECTIVE GREGORY JONES, STAR # 21285, CHICAGO POLICE DETECTIVE, ROBERTO GARCIA, STAR # 20555, CHICAGO POLICE OFFICER ANDREW CRAIG, STAR # 7515 and the CITY OF CHICAGO, defendants.

In support thereof, PHILIP ANDERSON states as follows:

## JURISDICTION

1. This action is brought pursuant to 42 U.S.C. Sec. 1983 to redress the deprivation of law of Philip Anderson's civil rights as secured by the United States Constitution.

2. This court has jurisdiction of the action pursuant to 28 U.S.C. Secs. 1331, 1343, 1367.

## VENUE

3. Venue is proper under 28 U.S.C. Sec. 1391(b).

## PARTIES

4. Plaintiff Philip Anderson is a male person who is a United States citizen and a resident of Cook County, Illinois.

5. Chicago Police Detective Gregory Jones, Star # 21285 was at all times relevant to this suit a detective in the Chicago Police Department. He is sued in his individual capacity.

6. Chicago Police Detective, Roberto Garcia, Star # 20555 was at all times relevant to this suit a detective in the Chicago Police Department. He is sued in his individual capacity.

7. Chicago Police Officer Andrew Craig, Star #7515 was at all times relevant to the suit an officer in the Chicago Police Department. He is sued in his individual capacity.

**8.** Defendant City of Chicago is a Municipal Corporation, organized pursuant to the laws of the State of Illinois.

`

## FACTUAL ALLEGATIONS

*Procedural History*

9. On May 5, 2016, Philip Anderson was found guilty of first-degree murder at a jury trial.

10. On an initial direct appeal, the Illinois appellate court reversed the trial court's denial of Philip Anderson's motion for a new trial and remanded for a new hearing on the motion.

11. On a second appeal, decided on March 21, 2023, the Illinois appellate court reversed Philip Anderson's conviction and remanded for a new trial.

12. On May 9, 2024, Philip Anderson was found not guilty by a jury.

*The Murder of Jonathan Hoskins*

13. Linda Hamer, a United States Postal Service letter carrier, was on her route the morning of April 1, 2013, on Eberhart Avenue between 74th Street and 75th Street when she saw a man approach a group of people on the side of the road. The man drew a firearm, discharged it, and fled in the direction from which he came. Hamer could not see the shooter's face or identify him, but noted he wore a black hoodie and black jeans.

14. On the same date. April 1, 2013, Charles Ambrose was standing with Jonathon Hoskins on a sidewalk in front of a building on south Eberhart Avenue near 74th and 75th street in the city of Chicago.

15. Ambrose was standing about 10 or fifteen feet away from Hoskins.

16. Ambrose heard a noise "like a firecracker" and saw Hoskins fall.

17. Ambrose did not see anyone leave the scene or approach Hoskins.

18. Ambrose did not see who shot Hoskins.

19. On the same date, April 1, 2013, Tyson Kirkman was with Hoskins and approximately seven other people at 74th and Eberhart. As they were talking, they heard gunshots and everyone ran. Kirkman did not see the shooter because Kirkman ducked under a vehicle and stayed there during the incident.

20. After the shooting, Kirkman checked on Hoskins, but Hoskins was not breathing or moving.

21. Kirkman left the scene of the shooting before the police were called because he was on parole and house arrest and was not supposed to be around such incidents and did not want to get into trouble.

22. Also on April 1, 2013, Cleveland Dorsey was outside with his cousin, Denone Dorsey, near the scene of the incident. At approximately 11 a.m., a man wearing a hoodie walked past them to Hoskins, who had his back turned, and shot Hoskins twice.

23. Cleveland saw the man's face.

24. The man Cleveland saw was not Philip Anderson.

25. Denone Dorsey also saw a “little bit” of the man’s face. Denone did not know whether he knew that person from the neighborhood, but the man was not Philip Anderson.

26. Hoskins died from gunshot wounds to the head which were fired at close range.

*Philip Anderson’s Alibi*

27. On March 31, 2013, Easter Sunday, Paris Fowler, Philip Anderson’s fiancé attended church with Vernita Anderson, Philip Anderson’s mother.

28. Fowler spent the night at her mother's home, with Philip Anderson in a guest bedroom.

29. Vernita Anderson’s home was in University Park, about an hour drive from where the shooting incident took place.

30. Fowler and Philip Anderson were still at Vernita Anderson’s home when Vernita Anderson left for work the following day, April 1, 2013, at 6:30 a.m. Paris Fowler woke up the morning of April 1, 2013, and at approximately 10 a.m. had a 30-minute

telephone conversation with her grandmother. She subsequently searched social media on the computer until approximately 11:15 a.m. when she got back in bed.

31. Philip Anderson had not left while Paris Fowler was on the phone and computer, and he was still in bed when she laid back down at 11:15 a.m

*The Police Investigation*

32. Defendant Andrew Craig was on patrol the morning of April 1, 2013 and was dispatched to the scene of the shooting. He and his partner arrived within minutes of the dispatch call and saw a person unresponsive on the ground.

33. Craig authored a police report which falsely claimed that unnamed people on the scene told him that "LP," or Philip Anderson, was the shooter.

34. On the night of the shooting, unknown Chicago police detectives contacted Kirkman at a halfway house, picked him up, and took him to the police station.

35. Before he was picked up, Kirkman was threatened by some of his friends and told to identify Philip Anderson as the shooter because they wanted to get rid of Philip Anderson.

36. After Kirkman was picked up by unknown Chicago police detectives, defendants Jones and Garcia threatened Kirkman that unless Kirkman identified Philip Anderson as the shooter they would tell Kirkman's parole officer that Kirkman missed his curfew and was supposed to be at a halfway house when he was actually at the scene of the shooting.

37. At the time they made these threats, Jones and Garcia knew that Kirkman was unable to identify the shooter, and that any identification he would make would be false.

38. Jones and Garcia showed Kirkman a photo-array, which included a picture of Philip Anderson.

39. When Kirkman viewed the photo array, Jones and Garcia told Kirkman that they knew the shooter's identity and asked him to sign his name by Philip Anderson's picture.

40. Kirkman falsely identified Philip Anderson because his friends were threatening him and because Jones and Garcia were threatening to call his parole officer and tell the officer that Kirkman had missed his curfew and was supposed to be at a halfway house when he was at the scene of the shooting.

41. Charles Ambrose was interviewed at a police station by defendants Jones and Garcia.

42. Ambrose did not tell defendants Jones and Garcia that he was with Hoskins and another person in front of a building on South Eberhart.

43. Ambrose did not tell defendants Jones and Garcia that he saw "LP," or Philip Anderson shoot Hoskins.

44. Ambrose did not know "LP."

45. Ambrose did not tell defendants Jones and Garcia that he saw a person walking north on the west side of the street with a dark hoodie pulled over his head.

46. Ambrose did not tell defendants Jones and Garcia that when the person approached, he "clearly" saw it was LP, or that LP walked toward him, "raised his arm and shot [Hoskins] in the back of the head."

47. Ambrose did not tell the police that LP then turned, ran southbound down Eberhart, and westbound through the north alley of 75th.

48. Ambrose did not tell the police that he had seen LP driving north on Eberhart from 75th in a tan Lincoln Continental approximately three days before the incident.

49. Defendants Jones and Garcia showed Ambrose five photographs, one of which was a photograph of Philip Anderson.

50. Ambrose said he did not recognize anyone.

51. Defendants Jones and Garcia pointed to the photograph of Philip Anderson and said "this is him," and "this is the shooter."

52. Defendants Jones and Garcia told Ambrose to sign his name under Philip Anderson's photograph.

53. Ambrose signed his name under the photograph.

54. Defendants Jones and Garcia authored police reports in which they falsely claimed that Ambrose had identified LP, or Philip Anderson, as the shooter.

55. The police reports did not include the fact that Jones and Garcia had told Ambrose that the photograph of Philip Anderson was a photograph of the shooter.

56. Defendant Garcia was present when Ambrose was interviewed by defendant Assistant States Attorney Thomas Prisco.

57. Garcia and Prisco suggested to Ambrose and drafted the contents of a written statement, falsely stating that Ambrose could identify "LP" as the shooter, a statement which Ambrose signed at their behest.

58. After Ambrose signed the statement, he testified to its contents before the grand jury.

*The Trial*

59. At trial, the medical examiner testified that Hoskins died from gunshot wounds to the head that were fired at close range. Two fired shell casings were found at the scene.

60. Linda Hammer testified to the facts outlined above.

61. Defendant Andrew Craig testified to the facts outlined above.

62. At trial, Charles Ambrose testified that he was present when Hoskins was shot but that he did not see the shooter. He was impeached with his written statement and grand jury testimony identifying “LP” as the shooter, which were both admitted as substantive evidence.

63. Ambrose also gave a statement, transcribed by an assistant State's Attorney (ASA). Ambrose identified his signature on the written statement, but did not know if the attached photograph, which he signed, depicted LP.

64. Ambrose denied telling police officers that he was not under the influence of marijuana or alcohol at the time he gave his statement, and did not recall stating that he gave his statement freely and voluntarily.

65. Ambrose further testified that he viewed a photo array, but informed officers that he did not recognize anyone in the array.

66. Ambrose acknowledged signing the photo array, but denied writing "LP, shooter" on it. Ambrose identified his signed photo array advisory form and the photo array with one photograph annotated "April 1, 2013, LP shooter, 8:29 p.m." in his handwriting with his signature. Ambrose testified that an officer told him to write that.

67. Defendants Gregory Jones and Assistant States Attorney Tom Prisco testified to Ambrose’s statements and claimed that no one had told Ambrose to identify Philip Anderson as the shooter.

68. Ambrose’s grand jury testimony was introduced through the testimony of another assistant States Attorney.

69. Tyson Kirkman testified that he had known Hoskins since grammar school and was with him and a group of other individuals the morning of April 1, 2013, standing outside together on 74th Street and Eberhart Avenue.

70. Tyson testified he heard gunshots fired in quick succession and ran, tripped, and fell, rolling onto a nearby car and ending up under a car. While rolling on the car, he looked up and saw Hoskins falling backward and, for a split second, saw the shooter's face as he was turning around running.

71. The entire incident happened in seconds. Kirkman did not see the shooter approach. At the time of the shooting, Kirkman testified he was standing close enough to Hoskins that he could have reached out and touched him.

72. Kirkman testified the shooter was wearing a black hoodie with the hood pulled up. He could make out a little bit of the shooter's face but not all of it with the hoodie. He could not make out a gun in the shooter's hand. Kirkman testified the shooter was light skinned.

73. Kirkman claimed at trial that the shooter was “LP,” whom he knew to be Philip Anderson.

74. Kirkman denied that he had told his cousin, Elizabeth Coats, that he had lied to the police when he identified Philip Anderson as the shooter or that he had told police that Anderson was the shooter because people in the neighborhood had told him to do so.

75. Defendant Jones testified and laid the foundation for footage from cameras on the 7400 block of south Eberhart which showed a man in dark clothing walking eastbound through the alley toward Eberhart. The same person later ran back westbound through the same alley. The man's face was not visible.

76. Elizabeth Coats, Kirkman's cousin, testified that on April 10, 2013, she picked Kirkman up from where he was staying and that he stayed at her home that night.

77. Coats testified that Kirkman told her that he had gotten into some trouble because police picked him up after a shooting. Kirkman told her that he told the police that Philip Anderson shot Hoskins because some people from the neighborhood were threatening him.

78. Coats stated that Kirkman told her that his friends were threatening him because they were in conflict with Philip Anderson.

79. Kirkman's friends purportedly said that Anderson was a problem and they needed him off the streets; they wanted to get rid of Anderson.

80. Kirkman told Coats he lied to the police and that he had not seen the person who shot Hoskins. Kirkman also told her he agreed with the police to "cover himself" because they were threatening to call his parole officer. The police learned Kirkman was supposed to have been at a halfway house but missed his curfew, so he told the police he witnessed Philip Anderson shoot Hoskins.

81. Cleveland Dorsey testified to the facts outlined above.

82. Denone Dorsey testified to the facts outlined above.

83. Paris Fowler testified to the facts outlined above.

84. Vernita Anderson testified to the facts outlined above.

85. The jury convicted Philip Anderson of first degree murder.

*Proceedings on the Motion for New Trial, Direct Appeal, and Second Trial*

86. Philip Anderson filed a motion and amended motion for a new trial, attaching a notarized and signed statement by Kirkman. Kirkman stated that he falsely identified "LP" as the shooter because he feared for his and his family's safety.

87. Kirkman stated that he was coming forward now because he relocated from Chicago and could not "move on" knowing that he "sent an innocent man to prison for the rest of his life."

88. At the hearing on defendant's motion, Kirkman testified that he falsely identified defendant as the shooter because people from the neighborhood threatened Kirkman and his family.

89. The trial judge denied the motion, finding that Kirkman was not credible because his testimony at the motion was inconsistent with a written statement and grand jury testimony.

90. The trial court’s decision was reversed on appeal because the trial judge confused Kirkman, who had not given a written statement or grand jury testimony, with Ambrose, who had signed a statement and testified before the grand jury.

91. On remand, a different trial judge denied the motion on the basis that Kirkman’s recantation was not “newly discovered” because he had given the same information to Coats.

92. The appellate court reversed and remanded for a new trial, finding that the recantation was newly discovered because Anderson’s attorneys had no way of forcing Kirkman to actually recant his identification until he chose to do so.

93. On remand, a second jury found Philip Anderson not guilty.

**COUNT I -- VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS BY DEFENDANTS JONES AND GARCIA BY FABRICATING FALSE REPORTS AND GIVING FALSE INFORMATION TO PROSECUTORS, CONCEALING THE FACT THAT CHARLES AMBROSE COULD NOT IDENTIFY PHILIP ANDERSON AS THE SHOOTER IN THE JONATHAN HOSKINS MURDER, AS WELL AS BY COERCING CHARLES AMBROSE TO FALSELY IDENTIFY PHILIP ANDERSON AS THE SHOOTER IN A WRITTEN STATEMENT AND AT THE GRAND JURY**

94. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

95. Defendants Jones and Garcia, acting individually and in concert, fabricated false reports and gave false information to prosecutors concealing from them the fact that Charles Ambrose could not identify Philip Anderson as the shooter in the Jonathan Hoskins murder.

96. Defendants Jones and Garcia, acting individually and in concert, coerced Charles Ambrose to falsely identify Philip Anderson as the shooter in a written statement and grand jury testimony, both of which were admitted at trial.

97. The admission of the written statement and the grand jury testimony was a material factor in Philip Anderson's conviction and deprived him of a fair trial.

98. The admission of these false statements deprived Philp Anderson of due process of law under the fourteenth amendment to the United States Constitution.

**COUNT II – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS BY DEFENDANTS JONES AND GARCIA BY USING A COERCIVE AND SUGGESTIVE IDENTIFICATION PROCEDURE TO INDUCE CHARLES AMBROSE TO FALSELY IDENTIFY PHILIP ANDERSON AS THE SHOOTER IN THE JONATHAN HOSKINS MURDER**

99. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

100. Defendants Jones and Garcia deprived Philip Anderson of due process by showing Charles Ambrose five photographs, one of which was a photograph of Philip Anderson, telling him that the photograph was a photograph of the "shooter," and telling Charles Ambrose to sign his name under the photograph.

101. Defendants Jones and Garcia's use of this suggestive procedure deprived Philip Anderson of a fair trial.

102. Defendants Jones and Garcia's coercion of this identification and use of a suggestive procedure was a material factor in Jaime Rios's conviction.

*This count was previously dismissed by the court and is included only for purposes of preserving the issue for a possible appeal.*

**COUNT III – VIOLATION OF FOURTEENTH DUE PROCESS BY DEFENDANT ANDREW CRAIG BY FABRICATING FALSE REPORTS AND GIVING FALSE INFORMATION TO PROSECUTORS THAT UNNAMED PERSONS HAD NAMED PHILIP ANDERSON OR "LP" AS THE SHOOTER**

103. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

104. Defendant Andrew Craig violated due process by fabricating false reports and giving false information to prosecutors that unnamed persons had named Philip Anderson or "LP" as the shooter.

105. This false information was a material factor in Philip Anderson's conviction.

**COUNT IV – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS BY DEFENDANTS JONES AND GARCIA BY COERCING TYSON KIRKMAN TO FALSELY IDENTIFY PHILIP ANDERSON AS THE SHOOTER WHEN THEY KNEW KIRKMAN WAS NOT ABLE TO MAKE AN IDENTIFICATION**

106. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

107. Defendants Jones and Garcia threatened Kirkman that unless Kirkman identified Philip Anderson as the shooter they would tell Kirkman's parole officer that Kirkman missed his curfew and was supposed to be at a halfway house when he was actually at the scene of the shooting.

108. At the time they made these threats, defendants Jones and Garcia knew that Kirkman was unable to make an identification and that any identification he would make would be false.

109. By threatening Kirkman to falsely identify Philip Anderson, defendants Jones and Garica violated Philip Anderson's fourteenth amendment right to due process.

110. Kirkman's false testimony identifying Philip Anderson was a material factor in his conviction.

**COUNT V – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS BY DEFENDANTS JONES AND GARCIA BY USING A COERCIVE AND SUGGESTIVE IDENTIFICATION PROCEDURE TO INDUCE TYSON KIRKMAN TO FALSELY IDENTIFY PHILIP ANDERSON AS THE SHOOTER IN THE JONATHAN HOSKINS MURDER**

111. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

112. Defendants Jones and Garcia deprived Philip Anderson of due process by showing Tyson Kirkman a photo-array showed Kirkman a photo-array, which included a picture of Philip Anderson, telling Kirkman that they knew the shooter's identity and telling him to sign his name by Philip Anderson's picture.

113. The use of this suggestive identification procedure deprived Philip Anderson of a fair trial.

*This count was previously dismissed by the court and is included only for purposes of preserving the issue for a possible appeal.*

**PENDANT STATE CLAIMS**

**COUNT VI -- MALICIOUS PROSECUTION BY DEFENDANT GREGORY JONES**

114. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

115. Defendant Gregory Jones, acting in concert with other defendants commenced the prosecution of Philip Anderson by arresting him without probable cause and by coercing Charles Ambrose to give false testimony against Philip Anderson at the grand jury and by coercing Tyson Kirkman to falsely identify Philip Anderson. Defendant Gregory Jones's actions played a significant role in the commencement and continuation of the prosecution of Philip Anderson.

116. Defendant Gregory Jones's actions proximately caused the commencement and the continuation of the prosecution of Philip Anderson.

117. The prosecution was terminated in Philip Anderson's favor by Philip Anderson's acquittal on May 9, 2024.

118. There was no probable cause for the indictment of Philip Anderson.

119. In commencing the prosecution against Philip Anderson, Gregory Jones acted with malice towards plaintiff, and was motivated by hostility or ill will.

**COUNT VII -- MALICIOUS PROSECUTION BY DEFENDANT ROBERTO GARCIA**

120. Philip Anderson realleges all previous paragraphs and incorporates them by reference.

121. Defendant Roberto Garcia, acting in concert with other defendants commenced the prosecution of Philip Anderson by arresting him without probable cause and by coercing Charles Ambrose to give false testimony against him at the grand jury and by coercing Tyson Kirkman to falsely identify Philip Anderson.

122. Defendant Roberto Garcia's actions played a significant role in the commencement and continuation of the prosecution of Philip Anderson.

123. Defendant Roberto Garcia's actions proximately caused the commencement and the continuation of the prosecution of Philip Anderson.

124. The prosecution was terminated in Philip Anderson's favor by Philip Anderson's acquittal on May 9, 2024.

125. There was no probable cause for the indictment of Philip Anderson.

126. In commencing the prosecution against Philip Anderson, Roberto Garcia acted with malice towards plaintiff, and was motivated by hostility or ill will.

**COUNT VIII: INDEMNIFICATION DEFENDANT CITY OF CHICAGO**

127. Philip Anderson realleges all previous paragraphs and incorporated them by reference. Illinois law provides that public entities, such as defendant City of Chicago are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

128. At all relevant time, defendants Jones, Garcia, Craig, and unknown Chicago police detectives were agents of defendant City of Chicago and of the Chicago Police Department acting within the scope of their employment. Defendant City of Chicago, therefore, is liable as principal for all torts committed by its agents, defendants Jones, Garcia, and Craig.

**PRAYER FOR RELIEF**

WHEREFORE, Philip Anderson requests this Honorable Court to grant Philip Anderson judgment against all defendants in a fair and just amount. Specifically Philip Anderson prays for both compensatory and punitive damages against all defendants in

addition to costs and reasonable attorney's fees and all other relief as this court finds just and reasonable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff Philip Anerson demands trial by jury for all the issues pleaded.

Plaintiff Philip Anderson

/s/ Stephen L. Richards

By: Stephen L. Richards
53 West Jackson Suite 756
Chicago, IL 60604
773-817-6927
Sricha5461@aol.com
Attorney No: 6191946

## CERTIFICATE OF SERVICE

I, Stephen L. Richards, an attorney, hereby certifies that on August 23, 2025 I electronically filed the **FIRST AMENDED COMPLAINT**

with the Court's CM/ECF system, which simultaneously sent an electronic copy of the same to all Counsel of Record.

*/s/ Stephen L. Richards*